UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AISHLY FOY, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:19-cv-01887-JHE |
| MARK PETTWAY, et al., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**[1]

On February 11, 2020, Plaintiff Aishly Foy ("Foy") filed her first amended complaint in this action through counsel, alleging, *inter alia*, Defendant Nurse Daniel Kyle ("Nurse Kyle") failed to treat injuries she sustained when she was beaten by law enforcement officers upon being booked into the Jefferson County Jail. (Doc. 24). Nurse Kyle moves for summary judgment on Foy's claims against him. (Doc. 69). Foy, proceeding *pro se*, opposes that motion.[2] (Doc. 77). Although Nurse Kyle had an opportunity to file a reply brief, (*see* doc. 72), he did not do so. For the reasons stated below, the motion is **GRANTED**.[3]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 32).

[2] In June 2020, Foy terminated the attorney initially representing her. (*See* docs. 46 & 48). After a lengthy stay during which Foy failed to secure counsel, Foy proceeded *pro se* beginning on November 4, 2020. (*See* doc. 53). Nurse Kyle moved for summary judgment on March 1, 2021, and Foy filed her response on March 12, 2021. (*See* docs. 69 & 77). On May 14, 2021, in the midst of a discovery dispute, Attorney Anthony Piazza entered a notice of limited appearance on Foy's behalf, (doc. 85), and represented Foy in that limited capacity until August 27, 2021, when the undersigned granted Attorney Piazza's motion to withdraw, (doc. 98). Following Attorney Piazza's withdrawal, Foy is again proceeding *pro se*.

[3] Because Nurse Kyle is entitled to summary judgment, his pending motion to dismiss for lack of prosecution, (doc. 102), is **DENIED AS MOOT**.

## I. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 324. (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere

'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II. Summary Judgment Facts

Foy, who has a number of mental and physical disabilities, was booked into the Jefferson County Jail on November 24, 2017. (Doc. 24 at ¶¶ 15, 18-19). Foy informed the classification officer of her "physical and mental health conditions" when she arrived at the jail. (*Id.* at ¶¶ 16, 18). Then, she went into a small room with a nurse to discuss her medical conditions, whereupon "a fight broke out." (*Id.* at ¶¶ 21-22).

Several Jefferson County Sheriff's Deputies broke up the fight and took Foy to a holding cell. (*Id.* at ¶¶ 23-25). In the holding cell, Defendants Maddox, Payne, Simpson, Wade, Martin, and Ennis beat Foy. (*Id.* at ¶¶ 26-34). Foy was then placed in a disciplinary cell under suicide watch. (*Id.* at ¶¶ 35-36).

Nurse Kyle was working as the booking nurse on November 24, 2017. (Declaration of Daniel Kyle, (doc. 69-2, "Kyle Decl."), at ¶ 4). As the booking nurse, Nurse Kyle's duties included conducting medical screenings, taking health histories of new inmates, and providing medical care to inmates as requested by other prison personnel. (*Id.*). After Nurse Kyle arrived for work, a sergeant with the Jefferson County Sheriff's Office asked him to assist Foy. (*Id.* at ¶ 5). The sergeant escorted Nurse Kyle to Foy's cell on the fifth floor of the jail. (*Id.*).

Nurse Kyle entered Foy's cell and found her lying on a bed. (*Id.* at ¶ 6). Nurse Kyle testified in his declaration that he stood at Foy's bedside and spoke with her, but Foy told him she did not need treatment and refused to allow Nurse Kyle to examine her or take her vital signs. (*Id.*). Nurse Kyle stated Foy refused to sit up and get out of bed and refused to remove the blanket or

smock covering her for examination, but the areas of her body Nurse Kyle could see (head and hands) had no visible injuries. (*Id.* at ¶ 7). However, four of the six use of force reports from the incident itself document Foy's injuries as a "swollen right eye," (doc. 77 at 15, 17-19), and the other two reports describe Foy's injuries as "swelling right side of face." (Doc. 77 at 14, 16). Nurse Kyle described Foy as "not in distress . . . coherent, conscious, cognizant, and able to speak." (*Id.* at ¶ 8). According to Nurse Kyle, Foy was noncompliant and uncooperative, but also did not voice any medical complaints. (*Id.* at ¶¶ 8-9). This was the only encounter Nurse Kyle had with Foy. (*Id.* at ¶ 10). Nurse Kyle says he did not draft a progress note for this encounter. (*Id.*).

Disputing Nurse Kyle's account, Foy points to a Field Incident Offense Report dated November 25, 2017. (Doc. 77 at 11).[4] In that report, Sergeant Terry L. Scott ("Sgt. Scott") indicated Foy had told a deputy she wanted to talk with a sergeant. (*Id.*). Sgt. Scott met with Foy shortly afterwards. (*Id.*). During that meeting, Foy told Sgt. Scott she wanted photographs taken of her eye and to be seen by a nurse because no one had checked on her since the fight. (*Id.*). Sgt. Scott took pictures of Foy's eye, (*id.* at 12-13), and told Foy she had been seen by a nurse the previous night. (*Id.* at 11). A deputy also told her the nurse had seen her twice the previous night. (*Id.*). Foy stated she could not remember that happening. (*Id.*).

Nurse Kyle addresses this report, stating Foy's right eye, which is visibly swollen in the photographs, (*see* doc. 77 at 12-13), did not look that way during his examination the previous night. (Kyle Decl.Doc. 69-2 at ¶ 11). Nurse Kyle states there was no visible swelling or bruising to Foy's eye or face during his encounter with her. (*Id.*). Nurse Kyle was not asked to examine

---

[4] Nurse Kyle filed the incident report and accompanying photograph under seal. (Doc. 69-2 at 6-7). However, Foy filed copies in unredacted form in opposition to Nurse Kyle's motion. (Doc. 77 at 11-13).

Foy on November 25, 2019, and his timecard reflects he was not working at the jail on that date or the next two days. (*Id.*) (citing doc. 73-3).

According to Jefferson County Jail records from November 2017, Qualified Mental Health Professional Matthew Foster ("Foster") assessed Foy on November 27, 2017. (Doc. 73-4 at 2). Foy provided Foster with some medical history and was tearful and anxious throughout the interview. (*Id.*). Foster directed Foy remain on suicide watch. (*Id.*). However, Foster documented on a health screening form that Foy reported only vision impairment "monitored by UAB" when asked if she had medical problems. (*Id.* at 3).

On November 28, 2017, Foy completed a sick call request indicating she had broken blood vessels in both eyes, a black eye, and bruises on her body. (*Id.* at 6). The examining nurse, Nurse Candis Fletcher, assessed Foy and noted Foy complained of soreness in her back. (*Id.* at 7). Nurse Fletcher noted Foy had bloodshot eyes and redness, but no bruises. (*Id.*). Nurse Fletcher noted her plan was to "Call MD for pain regimen," and the same day requested 400 mg of Motrin twice a day for two days to treat Foy's pain. (*Id.* at 7-8).

Also on November 28, 2017, Nurse Paul Tier completed an Intake Medical Screen and Health History form during an encounter with Foy. (*Id.* at 10-12). Foy reported she was not being treated by a physician at the time, but had been admitted to Cooper Green Hospital in the past for multiple personality disorder and manic depression. (*Id.* at 10). Among numerous other ailments, Foy denied recent head injury. (*Id.*). Nurse Tier characterized Foy as alert, oriented, calm, and cooperative, with normal speech. (*Id.*). He referred Foy to mental health and had Foy execute a

release so that medical staff could obtain Foy's medical records.[5] (*Id.* at 11, 13). Nurse Tier did not document any acute medical issues or complaints from Foy. (*See id.* at 10-12).

Beginning on November 30, 2017, Foy filed a series of grievances. (Doc. 77 at 25-29). Foy submitted the first four of these within a thirty-minute span on November 30, 2017, all summarized as "Beat by 5 white officers." (*Id.*). The first grievance details the beating after Foy's fight with the nurse, indicating Foy suffered "2 big blood clots a black eyes [sic] and bruises to the right side of [her] body." (*Id.* at 25). The second states that, *inter alia*, a deputy called her a "stupid black bitch" and kicked her in the right eye. (*Id.* at 26). The third indicates an officer and a woman with tattoos beat her and choked her as they transported her. (*Id.* at 27). The fourth states: "I have asked repeatedly for pictures to be taken of my eyes and my bruises . . . No one will take the pictures." (*Id.* at 28). Foy filed her fifth grievance on December 1, 2017, indicating that despite officers saying the incident had been documented, she was still requesting pictures. (*Id.* at 29). Specifically, Foy stated: "I also wanna include pictures of my hair that was ripped out and the bald spot I have. I have taken down the rest of the braids since booking and most of my hair is gone! I just want pictures to be on file. Not the one picture the deputy stood back and took." (*Id.*).

Nurse Kyle testified through his declaration that he met or exceeded the relevant standard of care. (Kyle Decl.Doc. 69-2 at ¶ 20). Further, he opined: "[a]t all times during my encounter with Foy, I exercised the same degree of care, skill, and diligence that other similarly situated Registered Nurses would have exercised, and I was not deliberately indifferent to any of her medical needs." (*Id.* at ¶ 21).

---

[5] Nurse Tier faxed copies of this letter to a variety of hospitals. (Doc. 73-4 at 14-24).

During Foy's stay in the jail, she declined food several times. On November 24, 2017, Officer Christopher "Shane" Adams submitted a statement indicating Foy "was offered food at regular supper time," but she refused it. (Doc. 73-5). A report dated December 5, 2017, indicates Foy had been "refusing her trays daily," which a fellow inmate reported was "because [Foy] wanted to try to pass out and go to the hospital." (Doc. 73-6 at 2). Foy also refused food and medicine on December 10, 2017. (*Id.* at 3). Nurse Kyle is not involved with inmate meals and did not withhold food from Foy or witness anyone else withholding food from her. (Kyle Decl.Doc. 69-2 at ¶ 23).

### III. Analysis

Foy's First Amended Complaint asserts five counts, but only two against Nurse Kyle: (1) Count Two, a 42 U.S.C. § 1983 count alleging Nurse Kyle "participated in—or witnessed, without intervention the deprivation of food, despite a duty to provide it," and "participated in—or witnessed, without intervention, the deprivation of medical care, despite a duty to provide it," violating her Eighth Amendment rights[6] (doc. 24 at ¶¶ 117-121); and (2) Count Five, an Alabama state law wantonness claim against defendants including Nurse Kyle, (*id.* at ¶¶ 157-161).

**A. Count Two – Section 1983**

Both of Foy's theories of Nurse Kyle's liability under § 1983 are that he was deliberately indifferent to her, either through denial of food or medical care. Although Foy states her § 1983 claims alleging deliberate indifference are governed by the Eighth Amendment, they are in fact governed by the Due Process Clause of the Fourteenth Amendment because she was a pretrial

---

[6] Other paragraphs of this count allege other defendants violated Foy's Eighth Amendment rights in other ways, (*see* doc. 24 at ¶¶ 111-16), but none of those are applicable to Nurse Kyle.

7

detainee. *Goebert v. Lee Cty, et al.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Regardless of the applicable Amendment, the legal standard is the same. *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).

### 1. Deprivation of Food

Nurse Kyle argues he cannot be liable for the deprivation of food because, as a nurse, he is not involved in the provision of food. (Doc. 69-1 at 16) (citing Kyle Decl.doc. 69-2 at ¶ 23). Nurse Kyle also contends he did not himself deprive Foy of food or witness anyone at the jail deprive Foy of food. (*Id.*). The undisputed evidence supports this. Additionally, the evidence indicates Foy affirmatively refused food on multiple occasions.

Foy does not address this issue at all in her response to Nurse Kyle's motion for summary judgment. Therefore, she has abandoned this claim. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned."); *Bush v. J.P. Morgan Chase Bank, N.A.*, No. 2:15-CV-00769-JEO, 2016 WL 324993, at *6 (N.D. Ala. Jan. 27, 2016); *Boyd v. Daniels*, No. 2:13-CV-354-MEF, 2014 WL 1245885, at *3 (M.D. Ala. Mar. 24, 2014) (dismissing claims on motion to dismiss for failure to respond); *Joseph ex rel. Joseph v. Allen*, No. CV-13-S-695-NE, 2013 WL 3712334, at *5 (N.D. Ala. July 12, 2013) (dismissing claims on motion to dismiss for failure to respond); *Hooper v. City of Montgomery*, 482 F. Supp. 2d 1330, 1334 (M.D. Ala. 2007) (same) (citing *Resolution Trust Corp. v. Dunmar Corp.,* 43 F.3d 587, 599 (11th Cir. 1995) (dismissing undefended claims on summary judgment)); *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

**2. Deprivation of Medical Care**

It is undisputed Foy received treatment for her injuries on November 28, 2017. Therefore, the question is whether Nurse Kyle declined to provide necessary treatment for Foy's injuries on November 24, 2017, and whether (to the extent it can be attributed to Nurse Kyle) the four-day delay in treatment rose to the level of a constitutional violation.

The United States Supreme Court has held that only deliberate indifference to serious medical needs is actionable under 42 U.S.C. § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A plaintiff must present evidence showing that (1) she had a serious medical need, (2) the defendant acted with deliberate indifference in responding or failing to respond to that need, and (3) the defendant's wrongful actions caused an injury. *See Goebert*, 510 F.3d at 1326. "A serious medical need is one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Pourmoghani-Esfahani v. Gee*, 625 F.3d 1313, 1317 (11th Cir. 2010) (cleaned up). The conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983. *See Bass v. Sullivan*, 550 F.2d 229, 230 (5th Cir. 1977).[7] Additionally, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

One way to show deliberate indifference is be demonstrating an official intentionally delayed providing an inmate with access to medical treatment, knowing the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay. *See Hill v. DeKalb*

---

[7] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

9

*Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta County*, 21 F.3d 388, 393–94 (11th Cir. 1994). Delay in access to medical treatment can violate the Fourteenth Amendment when it is "tantamount to unnecessary and wanton infliction of pain." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (cleaned up).  "In determining whether a delay in medical treatment rises to the level of deliberate indifference, relevant factors include: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." *McDaniels v. Lee,* 405 F. App'x 456, 458 (11th Cir. 2010) (citing *Goebert*, 510 F.3d at 1327).  In order to "survive summary judgment, a plaintiff must show that the delay attributable to the defendant's indifference likely caused the plaintiff's injury."  *Daniels*, 405 F. App'x at 458 (citing *Goebert*, 510 F.3d at 1327).  An inmate claiming an unconstitutional delay in medical treatment "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188.

As supported by the summary judgment record, Foy's medical needs were a swollen eye with broken blood vessels and soreness in her back (regardless of whether that soreness was accompanied by bruising).  There is some dispute about whether injuries of this type are a serious medical need.[8]  *Compare Kimbrough v. City of Cocoa*, No. 6:05-CV-471ORL31KRS, 2006 WL 2860926, at *3 (M.D. Fla. Oct. 4, 2006) (various ailments including a swollen eye were serious medical need); *Aaron v. Harris*, No. 6:16-CV-01038-LSC, 2019 WL 861115, at *9 (N.D. Ala.

---

[8] This is a different inquiry from whether excessive force that results in a minor injury is a constitutional violation. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (explicitly "reject[ing] the notion that 'significant injury' is a threshold requirement for stating an excessive force claim").

10

Feb. 22, 2019) (in addition to other facial injuries, eye which was "practically swollen shut" was serious medical need) *with Bessinger v. Mulvaney*, No. 7:14-CV-116 (HL), 2016 WL 4445762, at *10 (M.D. Ga. Aug. 22, 2016) ("an otherwise superficial injury like a black eye" not a serious medical need); *Gordon v. Murphy*, No. 4:15CV405-MW/CAS, 2017 WL 6507694, at *8 (N.D. Fla. Nov. 15, 2017), *report and recommendation adopted,* No. 4:15CV405-MW/CAS, 2017 WL 6507652 (N.D. Fla. Dec. 18, 2017) (black eye not a serious medical need because it "does not require treatment by a physician and would not be recognized by a lay person as requiring medical attention"). Since Nurse Kyle does not actually contest this element, for summary judgment purposes, the undersigned assumes Foy's injuries were enough to rise to the level of a serious medical need.

The only injury ever visibly apparent was Foy's swollen eye. Although there is no *medical* evidence in the record to support that Foy's swollen eye was apparent when Nurse Kyle examined her, there is enough other evidence that a jury could conclude it was visible to Nurse Kyle. Nurse Kyle testified he did not see any injuries on Foy's head, including swelling, but all six use of force reports from the incident itself describe Foy as having a swollen eye or swelling on the side of her face. And pictures from the day after Nurse Kyle's encounter with Foy also show this swelling. A jury could credit these contemporaneous records over Nurse Kyle's testimony, concluding that if the swelling was visible immediately before Nurse Kyle's visit to the officers completing the use of force reports, and immediately afterwards in the photographs, the swelling was also visible

during Nurse Kyle's visit. And assuming Foy's injuries were visible, Nurse Kyle did nothing to actually address them.[9]

However, there is no record evidence to support that Nurse Kyle deliberately withheld necessary treatment from Foy. According to Nurse Kyle's account, Foy did not make any complaints to him during his visit. According to Foy's account, she was unconscious during the visit and does not remember what happened, so she could not have complained of pain from her injuries or requested treatment in any case. Accepting Foy's account as true for summary judgment purposes, Foy does not indicate what care Nurse Kyle should have provided for her swollen eye or how he could have treated it while she was unconscious.[10] And while "prison officials may violate the [Fourteenth] Amendment's commands by failing to treat an inmate's pain," *McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999), Foy does not provide evidence to support—or even argue—her pain (unlike her swollen eye) was readily apparent to Nurse Kyle while she was unconscious such that it could be considered a serious medical need.

Additionally, the evidence does not support that Foy suffered any detrimental effect from the delay in treatment. The records reflect that when Foy regained consciousness on November 25, 2017, she requested documentation of her injuries and to be seen by a nurse. Although Sgt.

---

[9] Foy requests additional discovery as to some of the events of November 24, 2017: the identity of officers who accompanied Nurse Kyle to her cell, as well as the identity of and notes from any other nurse who visited her. (Doc. 77 at 4-5). The undersigned construes Foy's request as a motion under Fed. R. Civ. P. 56(d), through which a party can show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition" and potentially obtain more time for discovery. Foy has not provided an affidavit or declaration, but even if she had, this material would not be "essential to justify [her] opposition" because it would only shed light on whether Nurse Kyle did not offer Foy treatment despite her visible injuries. Other evidence in the record is sufficient to support this fact.

[10] Notably, any treatment Nurse Kyle provided to an unconscious Foy would have been without her consent.

12

Scott took pictures of Foy's injuries on that date, the jail does not appear to have sent any medical personnel until Mental Health Professional Foster's visit on November 27, 2017. But Foy did not indicate she had *any* medical problems in response to the open-ended question "do you have any medical problems" during this visit, apart from vision impairment that was "monitored by UAB."[11] (Doc. 73-4 at 3). The jail next sent Nurse Fletcher on November 28, 2017, in response to Foy's sick call describing "blood vessels broken in both eyes . . . a black right eye . . . and my body is bruised." (*Id.* at 6-8). Other than soreness in her back, Foy did not indicate she was experiencing any acute symptoms from any of these complaints. (*Id.* at 7). Nurse Fletcher prescribed a two-day regimen of Motrin and directed Foy follow up "as needed." (*Id.* at 7-8). The records reflect Foy completed this regimen. (*Id.* at 9). The record contains no further complaints of pain—including to Nurse Tier on the same day Nurse Fletcher treated Foy—and no subsequent sick calls. Foy filed numerous grievances concerning the *documentation* of her injuries, but none of these concerned any lingering symptoms she experienced as the result of those injuries. Instead, as Foy states in her brief, these grievances appear to be an effort to ensure that "this police brutality will not be covered up and that it will be handled accordingly," (doc. 77 at 4).

Further complicating matters for Foy, she has not met her burden to place medical evidence into the record linking any delay in treatment Nurse Kyle caused to any constitutionally significant injury to her.[12] The only medical evidence in the record indicates Foy's complaints of pain were

---

[11] It might be a reasonable inference that the vision impairment Foy referenced was the result of her swollen eye if not for the notation that her problems were being "monitored by UAB," which indicates that it predated the officers' use of force at the jail. Additionally, Foy did not complain on any other occasion of vision problems, even when referencing her injuries.

[12] Part of the reason for this is that Foy did not submit an expert report, which might have helped her show causation. *See McDaniels v. Lee,* 405 F. App'x at 458 (11th Cir. 2010) (citing

resolved by a conservative two-day treatment with Motrin. Therefore, that evidence is not "verifying medical evidence . . . establish[ing] the detrimental effect of delay in medical treatment," *Hill*, 40 F.3d at 1188. She provides no further evidence her condition worsened between the time Nurse Kyle visited her and her visit with Nurse Fletcher, or that she suffered any lingering effects from her injuries. Thus, even if Nurse Kyle failed to provide treatment to Foy on November 24, 2017, the record does not support that the four-day gap in treatment for an injury successfully treated with two days of Motrin rises to the level of a constitutional violation.

Since the evidence does not support Nurse Kyle violated Foy's constitutional rights by failing to provide medical care or depriving her of food, Nurse Kyle is entitled to summary judgment on Foy's § 1983 claim.

---

*Goebert*, 510 F.3d at 1329) ("The question of whether a delay in receiving treatment worsened an individual's condition overlaps with the causation inquiry."); *Wingster v. Head*, 318 F. App'x 809, 815-16 (11th Cir. 2009) (noting medical causation "presents a technical and scientific issue that requires the specialized knowledge of an expert medical witness"). The reason for this has been discussed at length in other orders in this case. In short, in the order lifting the stay that followed Foy's termination of her initial counsel, the undersigned directed the parties to confer, if necessary, on dates for an amended scheduling order. (*See* doc. 53). The parties' status report containing those dates included a January 4, 2021 deadline for Foy's expert report. (*See* doc. 54). It turns out that that deadline was proposed by Foy herself. On November 19, 2020, the undersigned entered a scheduling order which included that deadline. (Doc. 55). However, Foy did not submit an expert report. Foy moved to extend the deadline and again stay the case on January 22, 2021, (doc. 62), but the undersigned denied that motion, (doc. 66). Foy has requested a number of times that the issue be revisited, but none of those requests alter the reasons the motion was denied in the first place: Foy did not demonstrate any diligence during discovery, she herself proposed the January 4, 2021 expert deadline, any issues caused by Foy's *pro se* status were self-inflicted because she chose to terminate her initial counsel, and Foy did not present any of the issues she said prevented her from adhering to the scheduling order to the court prior to the expert report deadline's expiration. (*See* doc. 66 at 3-4).

### B. Count Five – Wantonness

Under Alabama law, wantonness is "conduct which is carried on with a reckless or conscious disregard for the rights or safety of others." ALA. CODE §6-11-20(b)(3). "'Wantonness' has been defined by [the Alabama Supreme] Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result . . . . The knowledge of the defendant is the sine qua non of wantonness." *Mazda Motor Corp. v. Hurst*, 261 So. 3d 167, 189 (Ala. 2017) (quoting *McMahon v. Yamaha Motor Corp., U.S.A.*, 95 So. 3d 769, 773 (Ala. 2012)). "While a party claiming wantonness does not have to prove an intent to injure, [the Alabama Supreme Court] has held that wantonness requires proof of some degree of conscious culpability." *Ferguson v. Baptist Health Systems, Inc.*, 910 So.2d 85, 92 (Ala. 2005) (quoting *Cessna Aircraft Co. v. Trzcinski*, 682 So.2d 17, 19-20 (Ala. 1996)). "'Conscious' means perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception." *Berry v. Fife*, 590 So. 2d 884, 885 (Ala. 1991) (quoting *Webster's New Collegiate Dictionary* 239 (1981)).

Foy does not specifically address Nurse Kyle's motion for summary judgment as to her wantonness claim, but many of Foy's arguments in support of her § 1983 claims presumably also apply to the wantonness claim. However, while a reasonable jury could find Nurse Kyle knew Foy had a swollen eye on November 24, 2017, there is no evidence from which it could infer anything about Nurse Kyle's state of mind in declining to provide care for the swollen eye. Furthermore, it is unclear how the evidence supports an injury would be likely to result from failing to treat an unconscious Foy's swollen eye, which is the most that can be attributed to Nurse Kyle. Accordingly, Nurse Kyle is entitled to summary judgment on Foy's wantonness claim as well.

## IV. Conclusion

For the reasons stated above, Nurse Kyle's motion for summary judgment, (doc. 69), is **GRANTED**. Foy's claims against the remaining defendants will proceed.[13]

DONE this 17th day of November, 2021.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[13] Other Defendants have moved to dismiss for lack of prosecution. (Docs. 99 & 100). The undersigned will address those motions separately.