FILED
2023 Mar-20  PM 01:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| AISHLY FOY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  2:19-cv-01887-JHE |
| | ) | |
| MARK PETTWAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION[1]

Through her First Amended Complaint ("FAC"), *pro se* Plaintiff Aishly Foy ("Foy")[2] brings this action under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and Alabama common law against Defendants Mark Pettway, Adam Ennis, Katelyn Payne, David Agee, Deputy Maddox, Deputy Simpson, Terry Scott, Jane Doe, Mary Doe, Deputy McCants, Deputy T. Russell, and Deputy Martin.[3]  (Doc. 24 at 1–3).  Defendants Pettway, Ennis, Payne, Agee, and Scott (the "Moving Defendants") have moved for summary judgment on all of Foy's remaining claims.  (Docs. 124 & 125).  Foy has not filed a response to the motion, nor have Defendants filed a reply in support.  Nevertheless, for the reasons discussed below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment.  (Doc. 32).

[2] At the time she filed the FAC, Foy was represented by counsel.  As described further below, Foy chose to fire her counsel and now proceeds *pro se*.

[3] The FAC also asserted claims against Defendants Nurse Fletcher and Nurse Daniel Kyle. Foy dismissed her claims against Nurse Fletcher (docs. 35 & 41), and the undersigned granted Nurse Kyle's motion for summary judgment, dismissing all claims against him (doc. 112).

## I. Procedural History

Foy filed this action on November 20, 2019.  (Doc. 1).  At the time, Foy was represented by attorney Kira Fonteneau.  Through Fonteneau, Foy filed the FAC on February 11, 2020.  (Doc. 24).

On June 19, 2020, Fonteneau moved to withdraw as counsel after Foy "notified her Counsel that she wishes to represent herself."  (Doc. 46).  The undersigned held a telephone conference on the motion on July 7, 2020, at which the undersigned discussed the ramifications of proceeding *pro se* with Foy.  The same day, the undersigned granted Fonteneau's motion to withdraw and stayed the case for 30 days to permit Foy an opportunity to find new counsel.  (Doc. 48).

The stay ultimately continued until November 4, 2020 (*see* doc. 53), after which date Foy proceeded *pro se*.  The parties submitted a proposed amended scheduling order (doc. 54), which the undersigned entered (doc. 55).  However, on January 22, 2021, Foy moved to amend the scheduling order and to stay the action.  (Doc. 62).  Specifically, Foy requested to modify the expired January 4, 2021 deadline for expert disclosure and to stay the action because criminal charges were pending against her.  (*Id.*).  On February 5, 2021, the undersigned denied the motion.  (Doc. 66).  As to amending the scheduling order, the undersigned noted many of Foy's problems had arisen because she voluntarily chose to proceed *pro se*, and Foy herself had proposed and agreed to a January 4, 2021 expert deadline.  (*Id.* at 2–3).  Additionally, the undersigned found Foy had not demonstrated diligence in pursuing discovery.  (*Id.* at 3–4).  As to the stay request, the undersigned observed that Foy had not provided any specific justification for why her Fifth Amendment rights would be implicated in this action.  (*Id.* at 4–5).

2

After several extensions, the dispositive motion deadline passed on January 13, 2022. (*See* doc. 113). Other than Defendant Nurse Kyle, no defendant filed a dispositive motion by this deadline. The undersigned set a status conference to discuss next steps. (Doc. 117). Defendants immediately moved to extend the expired dispositive motion deadline. (Doc. 118). At the status conference, the undersigned provided Foy with an opportunity to oppose the motion for an extension of time and memorialized this on-the-record statement in an order. (Doc. 120). Although that order was sent to the address Foy provided the court (*see, e.g.,* doc. 50), it was returned to the court as undeliverable on February 14, 2022. (Doc. 121). The undersigned's docket clerk attempted to contact Foy by phone to determine whether she needed to update her address, but Foy did not respond. The undersigned ultimately granted Defendants' motion and extended the dispositive motion deadline to March 15, 2022. (Doc. 123). The Moving Defendants filed their motion for summary judgment on that date. (Doc. 124).

On March 16, 2022, Foy called the undersigned's chambers to ask if the court had ruled on any pending motions. (*See* doc. 128). It became clear that the address and phone number on file for Foy were no longer correct. (*See id.*). The undersigned ordered the Clerk to update Foy's contact information, extended Foy's deadline to respond to the motion for summary judgment, and resent all relevant orders to Foy's updated address. (*Id.*). The undersigned further ordered Defendants to serve Foy with a copy of the motion for summary judgment at the updated address. (*Id.*). Foy has not responded to the motion for summary judgment, although she has contacted the

3

court to report that she is again detained in the Jefferson County Jail and has filed several motions from jail.[4]  (*See* docs. 131 & 132).

## II. Standard of Review

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of proving the absence of a genuine issue of material fact.  *Id.* at 323.  The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial."  *Id.* at 324.  (citation and internal quotation marks omitted).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[4] Federal Rule of Evidence 201(b)(2) permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  A district court may properly take judicial notice of an online state court docket under that Rule.  *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020).  Therefore, the undersigned takes judicial notice of Foy's state court criminal proceeding indicating a bench warrant for her arrest was issued on or about May 2, 2022 and that she was arrested on or about August 23, 2022.  *See State of Alabama v. Aishly Denise Foy*, Case No. 01-CC-2018–003326.00, docs. 241 & 245.  Both events occurred months after Foy updated her address and the undersigned sent case-related documents to that address.

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 836 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

### III. Summary Judgment Facts[5]

On November 24, 2017, Foy was arrested and booked into the Jefferson County Jail.[6] (Doc. 24 at 3, ¶ 15). When she arrived, she provided information to the classification officer about her physical and mental health conditions, including multiple personality disorder, anxiety disorder, and panic disorder. (*Id.* at 3–4, ¶¶ 16, 18).

After her initial classification, at around 4:03 p.m., Foy went into a small room with Nurse Cathy Gay ("Nurse Gay"). (*Id.* at 4, ¶ 21; Deposition of Aishley Foy (doc. 126-1, "Foy Depo.")

---

[5] Based on the applicable standard of review, these "summary judgment facts" are undisputed or, if disputed, taken in a light most favorable to Foy.

[6] Defendant Mark Pettway is Jefferson County's sheriff. (Doc. 24 at ¶ 4).

at 9 (28:14–23)).  As Foy explained her conditions to Nurse Gay, Nurse Gay referred to Foy as "this black junkie."  (Foy Depo. at 10 (31:2–32:3)).  Foy testified: "As soon as she said it, I turned, grabbed her, hit her, dragged her, pulled her out of the room.  She -- Well, I did, like, rough her up like (indicating -- just like dragging her.  I wasn't just like boom, boom, boom hitting her.  I hit her that one time and then I jerked her real quick and I started pulling her out of the room backwards."[7] (*Id.* (32:6–15)).  Several deputies, including Deputies Martin, Wade, Katelyn Payne, Simpson,[8] and Adam Ennis, separated Foy from Nurse Gay and placed Foy in a nearby holding cell.  (*Id.* at 10–11 (32:23–33:9); doc. 24 at ¶¶ 23–24; doc. 73-1 at 2).[9]

Foy testified that about five minutes later, five white officers—three males and two females—came back into the holding cell.  (Foy Depo. at 12 (38:12–17)).  The FAC identifies six officers who reentered the holding cell at this point: Deputies Payne, Ennis, Simpson, Maddox, Martin, and Wade.  (Doc. 24 at ¶¶ 26–30).  All of these officers are identified in the incident report.  (Doc. 73-1 at 2).  Foy testified that the female deputies were Deputies Payne and Simpson and that one of the male deputies was Deputy Ennis.  (Foy Depo. at 13–14 (44:20–45:9)).

As soon as the first officer opened the door, he "took [Foy's] braids, and he slammed [her] head against the wall."  (*Id.* (37:18–21)).  The officers stated: "black monkey, stupid black bitches.

---

[7] Foy was later criminally charged in connection with the altercation with Nurse Gay.  (Foy Depo. at 12 (40:17–19)).

[8] Deputy Simpson's first name is not listed in the complaint, but Foy identifies her as another female deputy.  (Foy Depo. at 13 (44:10–15)).

[9] Doc. 73-1 is a Jefferson County Sheriff's Office incident report prepared by Defendant Sergeant Terry Scott concerning the events of November 24, 2017, submitted as evidence supporting Nurse Kyle's motion for summary judgment.  The Moving Defendants "reference, adopt and incorporate" into their motion for summary judgment "all factual and legal arguments submitted by Nurse Daniel Kyle" in connection with his motion for summary judgment.  (Doc. 125 at 3 n.4).

You put your hand on one of ours, we going to show you." (*Id.* (39:5–7)).  Foy testified that the officers together "beat [her] in the holding cell." (*Id.* at 11–12 (36:10–12, (38:15–17)).  The same officer who slammed Foy's head against the wall also kicked her in the eye. (*Id.* at 12 (39:8–21)).  Foy fell unconscious at various points during the beating.[10] (*Id.* at 11 (34:3–5), 14 (46:14–15)).  Foy testified she "had injuries all over her body" as a result of the beating, including two black eyes. (*Id.* at 22 (80:10–20)).

At some point, Foy was taken from the holding cell to Cell A7 on the jail's fifth floor, where she was stripped naked but for a "a little -- like a crazy jacket" and placed on suicide watch.[11] (*Id.* at 11 (35:8–13), 14 (46:16–19), 18 (64:10–14)).  Foy testified she has "never had a suicide attempt or a suicide thought . . . I've always only been treated for major depression." (*Id.* at 16 (53:17–23)).  Foy did not testify who stripped her, but Defendant Deputy Payne testified that "[n]o male has ever been present when I have stripped a female inmate for suicide prevention." (Payne Aff. at ¶ 17).  Sergeant Scott's report indicates that the only deputies present in the cell at this time were Deputies Payne, Simpson, McCants, and Russell, all of whom are female. (Doc. 73-1).  Foy drifted in and out of consciousness until the next night at about five or six, which she recalled because the altercation with Nurse Gay took place on a Friday and when she awoke the Alabama/Auburn football game was on (making it Saturday). (Foy Depo. at 14 (45:22–48:3)).

---

[10] Deputies Ennis and Payne denied that any officer grabbed Foy's hair or braids and contend no deputy kicked, beat, or choked Foy. (Affidavit of Katelyn Payne (doc. 126-2, "Payne Aff.") at ¶¶ 2–10; Affidavit of Adam Ennis (doc. 126-3, "Ennis Aff.") at ¶¶ 2–9)).

[11] Deputy Ennis testified he was not one of the deputies who "escorted Aishley Foy to her cell." (Ennis Aff. at ¶ 10).  Deputy Payne testified Foy kicked her in the face at some point during "the altercation," "was not unconscious when we placed her in her cell," and "continued to resist and fight the deputies escorting her to her cell following the altercation with the nurse." (Payne Aff. at ¶¶ 5, 11–12).  Deputy Payne also denied Foy was bleeding or had swollen eyes when the deputies placed her in the cell. (*Id.* at ¶ 13).

On November 25, 2017, Sergeant Scott went to Foy's cell at her request, accompanied by Deputy Russell. (Foy Depo. at 13 (41:11–14); Affidavit of Terry Scott (doc. 126-4, "Scott Aff.") at ¶ 6; doc. 24 at ¶ 63). Foy made allegations against a male deputy involving excessive force, racial slurs, and other misconduct. (Scott Aff. at ¶¶ 5–6). Scott questioned the male deputies involved in the altercation with Foy, but they denied Foy's allegations. (*Id.* at ¶ 7). Scott testified he did not witness any excessive force or violations of policy on November 24, 2017. (*Id.* at ¶ 5).

On December 1, 2017, Foy submitted a grievance to Captain David Agee, whose responsibility it was to manage inmates and staff at the Jefferson County Jail. (Affidavit of David Agee (doc. 126-5, "Agee Aff.") at ¶ 2; Foy Depo. at 13 (43:2–5)). Less than thirty minutes later, Captain Agee "locked [Foy] down," placing her on "Max One" classification. (Doc. 24 at ¶ 82–83; Foy Depo. at 13 (44:1–9), 19 (67:8–12)). Captain Agee issued a Max One Classification Notice in connection with this discipline. (Doc. 126-6). The notice indicates Foy's reclassification was "determined by the following: current/past disciplinaries; current/past charges; current/past convictions; current/past behavior in this facility; and/or any other information that may be deemed appropriate with regard to your personal security or the security of this facility." (*Id.* at 2). The notice identifies the restrictions applicable to inmates in Max One classification, including reduced commissary privileges, limited visitation, no church/school privileges, and no law library visits. (*Id.*). Below these general restrictions is the following handwritten note: "Also phone & tablet privileges revoked for two weeks 12-1-17 until 12-14-17. Per Captain Agee." (*Id.*). Captain Agee testified "[a]ll disciplinary actions Aishley Foy received were due to her inappropriate behavior and in accordance with all standards and policies for all inmates." (Agee Aff. at ¶ 8).

After being placed into Max One, Foy testified her depression kicked in and she "completely shut down," not eating or drinking anything. (Foy Depo. at 19 (67:17–20)). Sergeant

Scott, Captain Agee, Deputy Ennis, and Deputy Payne each deny refusing to provide food to Foy. (Scott Aff. at ¶ 8; Agee Aff. at ¶ 9; Ennis Aff. at ¶ 11; Payne Aff. at ¶ 15).  According to evidence submitted with Nurse Kyle's motion for summary judgment, Foy declined food several times.  On November 24, 2017, Officer Christopher "Shane" Adams submitted a statement indicating Foy "was offered food at regular supper time," but she refused it.  (Doc. 73-5).  A report dated December 5, 2017, indicates Foy had been "refusing her trays daily," which a fellow inmate reported was "because [Foy] wanted to try to pass out and go to the hospital."  (Doc. 73-6 at 2). Foy also refused food and medicine on December 10, 2017.  (*Id.* at 3).  On that date, Foy was sent to the hospital.

### IV. Analysis

Foy's FAC asserts the following counts: (1) Count One, a § 1983 excessive force count under the Fourth Amendment, asserted against Defendants Martin, Ennis, Payne, Maddox, Simpson, and "Defendant" Wade (doc. 24 at ¶¶ 98–110); (2) Count Two, a § 1983 count under the Eighth Amendment relating to Foy's classification into suicide watch, stripping in the presence of male officers, refusal to review Foy's Max One classification, removal of Foy's access to the tablet, deprivation of food, and deprivation of medical care, asserted against Defendants Ennis, Payne, Agee, Fletcher, Kyle, Maddox, Simpson, Scott, Doe, Doe, McCants, and Russell, (*id.* at ¶¶ 111–121); (3) Count Three, a count under the Americans with Disabilities Act, the Rehabilitation Act, and § 1983 against Pettway in his official capacity, (*id.* at ¶¶ 122–138); (4) Count Four, a violation of the Rehabilitation Act and § 1983 against Pettway in his official capacity, (*id.* at ¶¶ 139–156); and (5) Count Five, an Alabama state law wantonness claim against Defendants Agee, Fletcher, Kyle, Scott, Doe, Doe, McCants, and Russell, (*id.* at ¶¶ 157–161).  As noted above, Foy has

dismissed her claims against Defendant Fletcher (docs. 35 & 41), and the undersigned has granted summary judgment in favor of Defendant Kyle on all of Foy's claims against him (doc. 112).

The Moving Defendants move for summary judgment on all of Foy's claims. First, though, the undersigned addresses Foy's claims against defendants other than the Moving Defendants.

### A. Other Defendants

Foy's claims against other defendants fall into two categories: (1) claims against defendants arguably improperly pled in the complaint, which the Moving Defendants contend in three brief footnotes should be dismissed (doc. 125 at 2–3); and (2) claims against fictitious defendants.

### 1. Allegedly Improperly Pled Defendants

As stated above, Foy asserts some claims against Defendants Martin, Maddox, Simpson, McCants, Russell, and "Defendant" Wade, none of whom have directly moved for summary judgment.   The Moving Defendants contend Foy's claims against these defendants should be dismissed as insufficiently pled (in addition to under Rule 56), as none of these defendants were listed as named parties in the section of the FAC labeled "Parties."  (Doc. 125 at 2–3) (citing doc. 24 at ¶¶ 2–13).  Although Foy has not opposed the Moving Defendants' motion to dismiss, this is not a sufficient basis on its own to grant the motion.  *See Giummo v. Olsen*, 701 F. App'x 922, 925 (11th Cir. 2017) (reversing when district court granted motion to dismiss solely on the basis it was unopposed and remanding to consider the motion's merits).  Therefore, the undersigned considers the motion's merits below.[12]

---

[12] The undersigned has some qualms about entertaining the Moving Defendants' allegations of pleading deficiencies at the summary judgment stage—years after Foy filed the

The Moving Defendants do not identify what authority they proceed under for their claim that a party must be dismissed solely because he or she is not specifically identified under a "Parties" heading in the complaint.  The Federal Rules of Civil Procedure require only that the parties be named in the caption of the complaint.  Fed. R. Civ. P. 10(a) ("Every pleading must have a caption with the court's name, a title, a file number, and a Rule 7(a) designation. The title of the complaint must name all the parties . . . .").  Although they are not specifically identified in the "Parties" section, each of the defendants the Moving Defendants discuss (with the exception of "Defendant Wade") is listed in the caption of the FAC.  And the complaint does not just simply list Martin, Maddox, Simpson, McCants, and Russell in the caption—it also includes factual allegations against them and lists each of them in at least one count.  (*See, e.g.,* doc. 24 at ¶¶ 23, 26, 30, 60–61, 100, 104, 112–117).  Under the circumstances, the undersigned sees no basis to dismiss Foy's claims against these defendants.  However, since the Moving Defendants argue these defendants are entitled to summary judgment for the same reasons as the Moving Defendants themselves, the undersigned will consider the Moving Defendants' arguments in support of summary judgment as they pertain to these defendants.

As for "Defendant" Wade, the undersigned finds he or she is not a proper defendant to this action even though the FAC contains factual allegations concerning "Defendant" Wade and lists "Defendant" Wade in Count One.[13]  Unlike the other defendants challenged in the motion for summary judgment, "Defendant" Wade is not listed in the complaint's caption.  There is some

---

FAC.  Nevertheless, just as the undersigned will not grant the motion as unopposed, the undersigned will also not deny it as untimely.

[13] Puzzlingly, although Foy lists allegations against Deputy Wade in one of the paragraphs under Count Two (*see* doc. § 24 at ¶ 113), Deputy Wade is not listed as a defendant in the heading of this count.

authority to support that "the caption is not determinative as to the identity of the parties to the action . . . ." 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1321 (3d ed. 2017). *See also Lundgren v. McDaniel*, 814 F.2d 600, 604 n.2 (11th Cir. 1987) (noting the same). However, the cases in which a court determined that a party not named in the caption of the complaint was a proper defendant are largely cases originally filed *pro se*, under which the court has a duty to provide a more lenient reading of the complaint. *See, e.g., Rizk v. Seminole Cnty. Sheriffs Dep't,* 857 F. App'x 619, 620 (11th Cir. 2021) (collecting cases for the proposition that "a pro se complaint may state a claim against individuals or entities who are identified in the body of it and whose wrongful conduct is alleged there, even if they are not named in the caption."). Foy filed the FAC in this case through counsel. Furthermore, Foy appears to have taken no steps, even when represented by counsel, consistent with an understanding that Deputy Wade is a defendant to this action. When she filed her original complaint, Foy requested summons for every defendant listed in the complaint's caption (doc. 7)—but not for Deputy Wade, even though Deputy Wade appears in the original complaint in essentially the same form as in the FAC (i.e., in the body but not the caption) (*see* doc. 1). This suggests Foy never understood Deputy Wade to be a defendant in this action despite the references in the complaint. *See Ronet v. City of Tampa Police Dep't*, No. 8:08-CV-2076-T-27MAP, 2009 WL 2578906, at *1 n.1 & 3 (M.D. Fla. Aug. 20, 2009) (dismissing alleged claims against purported parties not named in a complaint's caption when no steps were ever taken to serve those purported defendant). Accordingly, the undersigned concludes Deputy Wade is not a defendant in this action and will not construe the FAC as asserting claims against Deputy Wade.

**2. Fictitious Defendants**

As for Foy's claims against the two fictitious defendants, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). A limited exception to this rule exists "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber,* 951 F.2d 1210, 1215–16 (11th Cir. 1992)). Here, the FAC does not include any information at all about either fictitious defendant. Additionally, Foy never sought leave to amend her complaint to identify the real defendants at issue, and the time to do so has long passed. Therefore, the undersigned will *sua sponte* dismiss Foy's claims against Mary Doe and John Doe. *See Wiggins v. Risk Enter. Mgmt. Ltd.*, 14 F. Supp. 2d 1279, 1279 n.1 (M.D. Ala. 1998) (*sua sponte* dismissing claims against fictitious defendants); *Lawson v. Wal-Mart Stores, E., L.P.*, No. 2:17-CV-1885-VEH, 2019 WL 3790214, at *1 n.1 (N.D. Ala. Aug. 9, 2019) (collecting cases for the proposition that fictitious parties should be dismissed after discovery closes and the time to amend the complaint has expired).

**B. Moving Defendants' Motion for Summary Judgment**

Even though Foy has not filed a response opposing the Moving Defendants' motion for summary judgment, "summary judgment, even when unopposed, can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Thus, the court must consider the motion on its merits and review the evidence in support of the motion to determine whether the Moving Defendants have met their burden under Rule 56.

**1. Section 1983 Claims**

Defendants assert they are entitled to qualified immunity on Foy's § 1983 claims.  (Doc. 125 at 9–19).  "Qualified immunity protects government officials who were sued individually 'unless the law preexisting the defendant official's supposedly wrongful act was already established to such a high degree that every objectively reasonable official standing in the defendant's place would be on notice that what the defendant official was doing would be clearly unlawful given the circumstances.'"  *Morton v. Kirkwood*, 707 F.3d 1276, 1280 (11th Cir. 2013) (citation omitted).  To receive the protection of qualified immunity, the government official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.  *Kesinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004).  Once an official establishes he is acting within his discretionary authority, the burden shifts to the plaintiff to demonstrate qualified immunity is inappropriate.  *White v. City of Birmingham*, 96 F. Supp. 3d 1260, 1285 (N.D. Ala. 2015).  To determine whether qualified immunity is appropriate, the court asks two questions: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" (2) "If a violation could be made out on a favorable view of the parties' submissions, . . . [was] the right . . . clearly established?"  *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). This two-part analysis may be performed in any order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

**a. Count One - § 1983 Excessive Force (Martin, Ennis, Payne, Maddox, and Simpson)**

According to the FAC, Deputies Martin, Ennis, Payne, Maddox, and Simpson used objectively unreasonable force when they assaulted Foy without provocation while she was in the

holding cell, or, alternatively, failed to intervene to halt the use of excessive force.  (Doc. 24 at 12, ¶ 100, 103, 107, 108).

Although the FAC alleges a violation of the Fourth Amendment (as applied to the states through the Fourteenth Amendment), it is not entirely clear that Foy's claims are properly analyzed under that amendment.  "In an excessive force case arising out of an arrest, whether a constitutional violation occurred is governed by the Fourth Amendment's 'objective reasonableness' standard." *Hadley v. Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).  However, "[c]laims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause."  *Hicks v. Moore*, 422 F.3d 1246, 1254 n.7 (11th Cir. 2005) (quoting *Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (1996)).  In this Circuit, '[t]he precise point at which a seizure ends (for purposes of the Fourth Amendment coverage) and at which pretrial detention begins (governed until conviction by the Fourteenth Amendment) is not settled."  *Id.* That said, the Supreme Court has held that Fourteenth Amendment excessive force analysis, like the Fourth Amendment analysis, is governed by the "objective reasonableness" of the officers' conduct.  *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).  Following *Kinglsey*, the Eleventh Circuit has found the tests under either Amendment are analogous.  *Patel v. Lanier Cnty. Georgia*, 969 F.3d 1173, 1182 (11th Cir. 2020).  It is therefore unnecessary to determine whether Foy's arrest had ripened into pretrial detention: the standard is objective reasonableness.

"[O]bjective reasonableness turns on the 'facts and circumstances of each particular case.'" *Kingsley*, 576 U.S. at 397 (quoting *Graham v. Connor,* 490 U.S. 386, 396 (1989).  Under *Graham*, a court assessing the objective reasonableness of an officer's use of force looks to a number of factors, including "[1] the relationship between the need for the use of force and the amount of force used; [2] the extent of the plaintiff's injury; [3] any effort made by the officer to temper or

to limit the amount of force; [4] the severity of the security problem at issue; [5] the threat reasonably perceived by the officer; and [6] whether the plaintiff was actively resisting." *Patel*, 969 F.3d at 1182 (citing *Kingsley*, 576 U.S. at 397, in turn citing *Graham*, 490 U.S. at 396). This list is nonexclusive. *Id*. Furthermore, "if a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation such as an unprovoked beating takes place in his presence, the officer is directly liable under Section 1983." *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998).

The Moving Defendants contend it is undisputed "that Plaintiff was assaulting Nurse Gay at the time of the alleged excessive force" and that "Plaintiff continued to resist the Defendants while Defendants attempted to move Plaintiff to her cell following the assault of Nurse Gay and Plaintiff kicking Deputy Payne in the face." (Doc. 125 at 12). However, they do not address the portion of the encounter that took place in the holding cell. The undersigned discusses each portion below.

### i. Use of Force to Separate Foy from Nurse Gay

The undisputed facts are that Foy was assaulting Nurse Gay during the first portion of the encounter, when deputies forcibly removed her and placed her in a holding cell. To the extent Foy's complaint can be read to assert a claim that the officers used unreasonable force here, the *Graham* factors weigh in favor of concluding that the officers used reasonable force during this portion of the encounter. As to the first, second, and third factors, the officers used force to stop Foy from assaulting a nurse, and Foy admits that the encounter was not "rough"—the deputies separated the two, placed Foy in a holding cell, and left, apparently using no more force than necessary and without injuring Foy. (Foy Depo. at 11–12 (36:23–37:13)). On the fourth factor, a fight between a detainee and jail staff is a serious security issue warranting the use of force. As to

16

the fifth factor, a reasonable officer would have perceived Foy, a combatant in the fight, as a threat. Finally, it is unclear under the sixth *Graham* factor whether Foy was resisting the officers as they separated her from Nurse Gay, but that is at most neutral given that the remainder of the *Graham* factors strongly point to a reasonable use of force.

Since the officers' use of force was reasonable, no constitutional violation occurred. Therefore, to the extent the complaint contains a claim for excessive force based on this portion of the encounter, Deputies Martin, Ennis, Payne, Maddox, and Simpson are entitled to qualified immunity as to that claim.

### ii. Use of Force in Holding Cell

Because the Moving Defendants' arguments focus solely on other portions of the events of November 24, 2017, they have arguably not even sought summary judgment as to Foy's first count. As noted above, Count One relates solely to the portion of the encounter when Foy claims she was beaten by officers in the holding cell. That said, even if the Moving Defendants motion can be read to seek summary judgment as to Foy's actual claim, they have not met their summary judgment burden.

The summary judgment standard requires the court to take the facts in the light most favorable to Foy. Foy's description of the encounter is sharply at odds with the Moving Defendants' description. Viewed in the light most favorable to Foy, the deputies reentered her holding cell to beat her in revenge for getting into a fight with Nurse Gay. The Moving Defendants do not provide any explanation or justification for this use of force. In any case, each of the *Graham* factors weighs against the reasonable use of force. On the first, fourth, fifth, and sixth

factors, there appears to have been no need for the use of force at all.[14]  Foy had been separated from Nurse Gay and was restrained in a holding cell, posing neither an active threat to anyone nor a security problem.  Under Foy's version of events, the deputies' use of force was gratuitous and retributive.  As to the second factor, while Foy does not appear to have sustained any long-term injury, she contends she was bruised and knocked unconscious.  The third factor does not help the Moving Defendants either.  There is no evidence to support that an officer limited the amount of force used on Foy, and in fact *no* amount of force was appropriate under the circumstances. Accordingly, a reasonable jury could conclude that Deputies Payne and Ennis violated Foy's constitutional right to be free from excessive force.[15]

Furthermore, the deputies cannot shield themselves through qualified immunity because Foy's right to be free from excessive force was clearly established.  A right may be clearly established in one of three ways: (1) "case law with indistinguishable facts clearly establishing the

---

[14] At some point, it must have been necessary to move Foy from the holding cell to a different cell within the jail.  The Moving Defendants arguably contend Foy resisted Deputy Payne during this process "while Defendants attempted to move Plaintiff to her cell following the assault of Nurse Gay and Plaintiff kicking Deputy Payne in the face" (doc. 125 at 12).  Even if this concerns Deputy Payne moving Foy from the holding cell to the cell on the fifth floor at the end of the incident in the holding cell, this does not address Foy's testimony about how the encounter *started*: as an unprovoked, retaliatory beating.

[15] The Moving Defendants do not raise as a defense Foy's inability to identify which officers were responsible for which specific portion of the alleged beating.  Neither Deputy Payne nor Deputy Ennis deny they were present for this portion of the encounter with Foy (*see* docs. 126–2 & 126–3), and Foy attributed the beating to all the officers present (Foy Depo. at 12 (38:10– 17)).  The Eleventh Circuit has rejected the notion that a plaintiff's excessive force claim fails when she cannot identify the specific officer responsible for administering excessive force in a collective beating.  *Velazquez v. City of Hialeah*, 484 F.3d 1340, 1342 (11th Cir. 2007).  "Were this the law, all that police officers would have to do to use excessive force on an arrestee without fear of consequence would be to put a bag over the arrestee's head and administer the beating in silence."  *Id.*  And any officer present who did not participate in the beating would be liable for failure to intervene.  *Ensley*, 142 F.3d at 1407.

constitutional right"; (2) "a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right"; or (3) "conduct so egregious that a constitutional right was clearly violated, even in the total absence of case law." *Baxter v. Roberts*, 54 F.4th 1241, 1263 (11th Cir. 2022) (quoting *Lewis v. City of West Palm Beach*, 561 F.3d 1288, 1291–92 (11th Cir. 2009)). The Eleventh Circuit has held that "qualified immunity is not appropriate when the *Graham* analysis yields an answer that is clear beyond all doubt," which is the case here. *Stephens v. DeGiovanni*, 852 F.3d 1298, 1324 (11th Cir. 2017) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002)). Additionally, taking the facts favorably to Foy, the deputies' conduct falls into both the second and third categories above. The Eleventh Circuit has "repeatedly ruled that a police officer violates the Fourth Amendment, and is denied qualified immunity, if he or she uses gratuitous and excessive force against a suspect who is under control, not resisting, and obeying commands." *Saunders v. Duke*, 766 F.3d 1262, 1265 (11th Cir. 2014). Although Deputy Payne's affidavit indicates Foy kicked her in the face during "the altercation" and resisted her during the deputies' attempt to "escort[] her to her cell following the altercation with the nurse" (Payne Aff. at ¶ 12), she provides no indication when in the timeline of events any of this occurred. A reasonable jury could still conclude based on Foy's testimony that she was secured in the holding cell and not offering any resistance when deputies reentered to gratuitously beat her in revenge for the altercation with Nurse Gay. This falls within the broad principle articulated in *Saunders*. *See Wade v. United States*, 13 F.4th 1217, 1225 (11th Cir. 2021) ("The dispositive question is whether the law at the time of the challenged conduct gave the government official fair warning that his conduct was unconstitutional . . . ."). Further, even in the absence of case law on point, it would have been obvious to a reasonable officer that beating a detainee not for a legitimate law enforcement or disciplinary purpose but as payback for "put[ting] her hand on one of ours" violates

the Constitution.

Although it is the plaintiff's burden to show a right was clearly established, the Eleventh Circuit has previously upheld a district court's denial of qualified immunity at summary judgment even when the plaintiff did not file a response based on the defendants' failure to show they were entitled to judgment as a matter of law.  *See Howard v. Gee*, 538 F. App'x 884, 887 (11th Cir. 2013).  Here, not only have the Moving Defendants missed the crux of Foy's excessive force claim, but the evidentiary record shows they would not be entitled to summary judgment in any case. Accordingly, their motion is due to be denied as to Count One.

**b. Count Two – Other § 1983 Claims (Ennis, Payne, Russell, McCants, Agee, and Scott)**

In Count Two, Foy alleges Defendants Ennis, Payne, Russell, McCants, Agee, and Scott participated in and/or failed to intervene in (1) Foy's classification into suicide watch (doc. 24 at ¶ 112); (2) stripping Foy naked in the presence of male officers (*id.* at ¶ 113); (3) the refusal to review Foy's classification into Max One at 30- and 60-day intervals (*id.* at ¶ 114); (4) the removal of Foy's access to the tablet inmates use to submit grievances (*id.* at ¶ 115); (5) the deprivation of Foy's food (*id.* at ¶ 116); and (6) the deprivation of medical care (*id.* at ¶ 117).  Foy indicates these actions violated her Eighth Amendment rights.[16]  (*Id.* at ¶ 121).

---

[16] Technically, the Eighth Amendment "applies only to confinement that occurs subsequent to and as a consequence of a person's lawful conviction of a crime." *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985).  Since Foy was a pretrial detainee, any conditions of confinement claims she raises arise under the Fourteenth Amendment's Due Process Clause.  *See Grochowski v. Clayton Cnty., Georgia through Turner*, 961 F.3d 1311, 1318 (11th Cir. 2020) (citing *Hamm*, 774 F.2d at 1572).  That said, "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment for convicted persons." *Hamm*, 774 F.2d at 1574.

The analysis portion of the Moving Defendants' brief does not directly address any of these claims apart from deprivation of medical care. (*See* doc. 125 at 10–16). As far as that claim goes, Nurse Kyle, the jail's booking nurse on November 24, 2017, previously moved for summary judgment as to Foy's claims he unconstitutionally denied her medical care. (Doc. 69). The undersigned granted that motion, finding Foy had not established an unconstitutional denial of medical care. (Doc. 112). As noted above, the Moving Defendants incorporate Nurse Kyle's motion for summary judgment and the facts in support of it into theirs. *See supra*, n.9. There is nothing new in the summary judgment record to support an underlying denial of medical care claim,[17] which the undersigned has previously held requires Foy to present verifying medical evidence. (*See* doc. 112 at 10) (citing *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188 (11th Cir. 1994)). It follows that Foy cannot maintain a failure to intervene claim based on denial of medical care against any current defendant. *See Sebastian v. Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019) (noting in excessive force context that "the failure to intervene claim is . . . wholly dependent on the underlying" constitutional claim); *Sanders v. City of Union Springs*, 207 F. App'x 960, 965 (11th Cir. 2006) ("[G]iven that the plaintiffs are unable to establish a constitutional violation, their claim for failure to intervene must fail.").

─────────────────

[17] As for other potential instances of deprivation of medical care, Foy does not contend she was denied appropriate medical care for her mental disorders while in the Jefferson County Jail. (Foy Depo. at 15–16 (52:7–13)). Foy did testify that several nurses stood over her before she was taken to the hospital on December 10, 2017, stating "Let her sit here. Let her die." (Foy Depo. at 19–20 (68:20–69:1)). However, she also testified that another nurse called EMT and sent her to the hospital at essentially the same time the other nurses were refusing to treat her. (Foy Depo. at 20 (69:1–19)). Assuming this could be part of a deprivation of medical care claim, none of the nurses who refused to treat Foy are identified or defendants in this case, and there is no evidence to support that any other defendant was aware of and had an opportunity to intervene in this incident.

Although the analysis portion of the Moving Defendants' brief essentially ignores the other § 1983 claims in Count Two, the facts portion of the brief addresses them by pointing to facts at odds with the claims in the FAC.  (*See id.* at ¶¶ 17–41).  The undersigned addresses these claims as they pertain to each defendant below.

### i. Deputies Ennis and Payne

A review of the facts and the summary judgment record reveals nothing to support that Deputies Ennis or Payne had an opportunity to intervene in any of the events highlighted in the complaint, to the extent it even supports that they happened.  The undisputed evidence is that Deputy Ennis was not present when Foy was stripped and placed in a suicide vest (Ennis Aff. at ¶ 12) and that "no male has ever been present" when Deputy Payne stripped a female inmate for suicide prevention (Payne Aff. at ¶ 17).  There is no evidence to support that Deputies Ennis or Payne were subjectively aware of Foy's classification, that Foy's access to the tablet had been removed, or that Foy had been deprived of food.  Foy's Count Two claims against Deputies Ennis and Payne are therefore due to be dismissed.

### ii. Deputies Russell and McCants

Foy alleges in the FAC that when Foy regained consciousness after the beating, she asked Deputies McCants and Russell to take her to the emergency room and they refused to do so.  (Doc. 24 at ¶¶ 60–61).  This portion of allegations relate to Foy's claims that she was unconstitutionally deprived of medical care, which (as stated above) the undersigned has already determined must be dismissed.  The FAC also indicates Deputy Russell accompanied Sergeant Scott to Foy's cell on November 25, 2017.  (*Id.* at ¶ 63).  The only evidence concerning either deputy is that they work on the fifth floor (Foy Depo. at 17 (58:16–21)) and that they were present (along with only other female officers) when Foy was stripped (doc. 73–1 at 2).  There is no record evidence to support

that either deputy participated or had an opportunity to intervene in classifying Foy, removing her access to the tablet, or depriving her of food.  Therefore, any claims Foy asserts in Count Two against Deputies Russell and McCants are due to be dismissed.

### iii. Sergeant Scott

Similarly, there is no record evidence supporting Sergeant Scott's involvement in anything but receiving Foy's reports of officer misconduct on November 25, 2017, and later taking photos of Foy's injuries—neither of which Foy directly contends is a constitutional violation.  Sergeant Scott could not have intervened in any constitutional violations Foy reported because they had happened the previous day.[18]  There is no evidence that Sergeant Scott played a role in Foy's classification, initial or otherwise, that he deprived her of food, or that he was involved in the decision to remove Foy's access to the tablet.  Sergeant Scott is entitled to summary judgment on Foy's Count Two claims against him.

### iv. Captain Agee

Foy provides no evidence to support Captain Agee had anything to do with stripping her in the presence of male officers, depriving her of food, initially classifying her into suicide watch, or failing to review her classification into Max One.[19]  Thus, these claims are due to be dismissed.

_____

[18] Sergeant Scott testified he witnessed "the altercation between Aishley Foy and the nurse" and did not observe "any excessive force or violations of policies between the deputies who intervened in the altercation between Aishley Foy and the nurse."  (Scott Aff. at ¶¶ 4–5).  Foy does not contend this was a constitutional violation and even if she did, the Moving Defendants would be due summary judgment on them.  No evidence suggests Sergeant Scott witnessed any other events on November 24, 2017, including the beating in the holding cell.

[19] Captain Agee's Max One Classification Notice indicates Foy's classification "will be reevaluated within 30 to 60 days by a classification officer" (doc. 126-6), but there is no evidence to support Captain Agee himself was responsible for performing or overseeing this review.

The record does contain evidence to support Captain Agee was involved in removing Foy's access to the tablet: Foy's statement that Captain Agee "locked [her] down after [she] reported" grievances plus the note on the Max One Classification Notice indicating Captain Agee had personally instructed that Foy be denied access to the tablet.  However, the only record evidence concerning Captain Agee's motivation for this is (1) his affidavit stating Foy was appropriately classified and was disciplined solely for her behavior (Agee Aff. at ¶¶ 6–8) and (2) the Max One Classification Notice's statement that Foy's phone and tablet privileges (among other things) were revoked based on a list of "current/past disciplinaries; current/past charges; current/past convictions; current/past behavior in this facility; and/or any other information that may be deemed appropriate with regard to your personal security or the security of this facility" (doc. 126–6 at 2). Because Foy did not respond to the motion for summary judgment, she offers no contrary evidence and provides no argument supporting an Eighth Amendment violation based on these facts.[20] Therefore, this claim is also due to be dismissed.

### 2. Counts Three and Four – ADA and Rehabilitation Act (Pettway – Official Capacity)

As noted above, Foy asserts claims under the ADA and the Rehabilitation Act against Sheriff Pettway in his official capacity only.  Specifically, Foy's ADA claims in Count Three are that as a person with a disability, she was excluded from various services provided by the jail, "including the commissary, leaving her cell, attending church, filing grievances, receiving mental and physical healthcare, and other opportunities."  (Doc. 24 at ¶¶ 28–29).  Her Rehabilitation Act

---

[20] The court does not have an obligation to recharacterize the claims in the FAC, which was filed through counsel.

24

claims in Count Four is essentially the same.[21]  (*Id.* at ¶¶ 141–46).  Foy also asserts Sheriff Pettway is liable for violations of the ADA and the Rehabilitation Act under § 1983 on failure to train, deliberate indifference, and pattern and practice theories.  (Doc. 24 at ¶¶ 134, 137, 152, 155).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.  The Rehabilitation Act says that no disabled person "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794.  In order to recover under either statute, a plaintiff must establish: (1) that she is a qualified individual with a disability, (2) that she was either excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity, (3) that the exclusion, denial of benefit, or discrimination was by reason of such disability.  *Charles v. Johnson*, 18 F.4th 686, 702 (11th Cir. 2021) (Rehabilitation Act); *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (Title II).

The Moving Defendants assert Sheriff Pettway is entitled to qualified immunity on these claims.  (Doc. 125 at 19–24).  However, an official "sued in his official capacity," as Sheriff Pettway is here, "is not, of course, entitled to . . . the individual capacity defense of qualified immunity." *Bruce v. Beary,* 498 F.3d 1232, 1249 n. 33 (11th Cir. 2007).  Furthermore, neither the ADA nor the Rehabilitation Act provides for claims against individuals. *See Mason v. Stallings,*

---

[21] Confusingly, Foy alleges violations of both the ADA and the Rehabilitation Act in Count Three, and duplicative Rehabilitation Act violations in Count Four.

82 F.3d 1007, 1009 (11th Cir. 1996) (ADA); *Farrell v. U.S. Dept. of Justice,* 910 F. Supp. 615, 618 (M.D. Fla. 1995) (Rehabilitation Act).  Consequently, qualified immunity does not appear to be a defense to an ADA or Rehabilitation Act claim at all.

Leaving aside that the Moving Defendants rely on an inapplicable defense, the thrust of their argument is that Foy has not established an underlying constitutional violation for denial of medical care, so she cannot hold Sheriff Pettway liable for that constitutional violation based on other theories.[22]  (Doc. 125 at 19–24).  It is true that Foy does not have a viable denial of medical care claim for the reasons stated above and in the memorandum opinion granting summary judgment to Nurse Kyle, so Foy's denial of medical care § 1983 claims against Sheriff Pettway in his official capacity may not proceed.  *See Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").  However, the Moving Defendants conflate whether Foy has established a constitutional violation based on denial of medical care with (1) whether she has satisfied the standards of the ADA or the Rehabilitation Act or (2) whether she has adequately supported official capacity § 1983 claims based on the other purported violations she alleges.  Neither of these entitles Sheriff Pettway to summary judgment on Foy's other Count Three and Four claims.  Accordingly, the motion for summary judgment is due to be denied as to the remaining portions of these counts.

---

[22] The "other theories" the Moving Defendants argue against appear to be different individual capacity claims (e.g., Pettway's supervisory liability), rather than the official capacity claims Foy actually asserts.

### 3. Count Five – Wantonness Claim (McCants, Russell, Agee, and Scott)

Count Five of the FAC alleges Defendants Agee, Scott, McCants, and Russell took unspecified actions "in violation of known policies, procedures, rules, and guidelines" which amounted to wantonness under Alabama law.   (Doc. 24 at ¶¶ 158–61).   Inferring from the defendants named in the count, this appears to cover actions Defendants took after Foy was taken from the holding cell to the fifth floor.

Under Alabama law, wantonness is "conduct which is carried on with a reckless or conscious disregard for the rights or safety of others." ALA. CODE §6-11-20(b)(3).  "'Wantonness' has been defined by [the Alabama Supreme] Court as the conscious doing of some act or the omission of some duty while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result . . . . The knowledge of the defendant is the sine qua non of wantonness."  *Mazda Motor Corp. v. Hurst*, 261 So. 3d 167, 189 (Ala. 2017) (quoting *McMahon v. Yamaha Motor Corp., U.S.A.*, 95 So. 3d 769, 773 (Ala. 2012)). "While a party claiming wantonness does not have to prove an intent to injure, [the Alabama Supreme Court] has held that wantonness requires proof of some degree of conscious culpability." *Ferguson v. Baptist Health Systems, Inc.*, 910 So. 2d 85, 92 (Ala. 2005) (quoting *Cessna Aircraft Co. v. Trzcinski*, 682 So. 2d 17, 19–20 (Ala. 1996)).   "'Conscious' means perceiving, apprehending, or noticing with a degree of controlled thought or observation: capable of or marked by thought, will, design, or perception." *Berry v. Fife*, 590 So. 2d 884, 885 (Ala. 1991) (quoting *Webster's New Collegiate Dictionary* 239 (1981)).

The Moving Defendants do not directly argue the merits of Foy's wantonness claims. Instead, they contend they are entitled to absolute immunity under Alabama law because all of Foy's claims concern actions taken within the line and scope of their duties.  (Doc. 125 at 24–26).

Section 14 of the Alabama Constitution provides that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. art. I, § 14. "It is well settled law that the State is generally immune from liability under" this provision. *Ex parte Wilcox County Bd. of Education*, 279 So. 3d 1135, 1140 (Ala. 2018). This doctrine is broad, but it serves to protect the State, not the individual. *Id*. Therefore, although the doctrine applies to sheriffs and their deputies, *Ex parte Haralson*, 853 So. 2d 928, 932 (Ala. 2003), it only protects them as individuals when they are sued for damages arising out of the performance of duties within the scope of their employment when such a suit is "essentially a suit against the state." *Ex parte Walker*, 97 So. 3d 747, 752 (Ala. 2012) (quoting *Parker v. Amerson*, 519 So. 2d 442, 445 (Ala. 1987)). Any employee acts within the scope of his employment for absolute immunity purposes when his actions are "so closely connected with what [he] is employed to do and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment." *Dolgencorp, LLC v. Spence*, 224 So. 3d 173, 180 (Ala. 2016) (citation omitted).

The Moving Defendants have asserted these defendants were acting within the scope of their employment. They leave their analysis at that, contending this conclusively establishes their immunity. (*See* doc. 125 at 26) ("Plaintiff is stuck with asserting claims arising from and within the line and scope of Defendants' duties, for which Defendants are entitled to absolute immunity under the Alabama Constitution"). While it is possible to envision counterarguments to the Moving Defendants' arguments, Foy has not opposed the motion and thus has not challenged the Moving Defendants' facially valid assertion of immunity. Accordingly, Foy's wantonness claim is due to be dismissed.

## V. Conclusion

For the reasons stated above, the Moving Defendants' motion to dismiss Foy's claims against Defendants Martin, Maddox, Simpson, McCants and Russell and "Defendant" Wade is **GRANTED IN PART** to the extent that the FAC will not be read to assert a claim against "Defendant" Wade, but otherwise **DENIED**.

The Moving Defendants' motion for summary judgment is **GRANTED IN PART** to the extent that the following claims are **DISMISSED WITH PREJUDICE**:

- The portions of Count One (if any) concerning the use of force to separate Foy from Nurse Gay;

- Count Two;

- The § 1983 claims in Counts Three and Four concerning denial of medical care; and

- Count Five.

The motion for summary judgment is **DENIED** as to the following, which will proceed to trial:

- The remainder of Count One;

- The portions of Counts Three and Four not concerning denial of medical care.

Foy and Defendants are each **ORDERED** to file a status report by **April 3, 2023** regarding next steps in this case, including (1) whether mediation would be beneficial and (2) the logistics of setting this case for trial given Foy's current detention in the Jefferson County Jail.

DONE this 20th day of March, 2023.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE