UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| AISHLY FOY, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:19-cv-01887-JHE |
| ADAM ENNIS, et al.,[1] | ) |
| Defendants. | ) |

## MEMORANDUM OPINION[2]

Defendants Adam Ennis, Deputy Maddox, Deputy Martin, Katelyn Payne, and Deputy Simpson (the "Defendants") have moved to dismiss this action due to lack of prosecution by Plaintiff Aishly Foy ("Ms. Foy" or "Plaintiff").[3] (Doc. 170). Foy has filed a response (doc. 173), and Defendants have filed a reply in support (doc. 180). For the reasons discussed below, Defendants' motion is **GRANTED**.

### I. Background and Procedural History

The undersigned recounted relevant background in a December 2, 2021, memorandum opinion resolving a separate motion to dismiss for lack of prosecution:

> In brief, Foy, who has a number of disabilities, was booked into the Jefferson County Jail on November 24, 2017. ([Doc. 24] at ¶ 15). There, she went into a small room with a nurse to discuss her medical conditions, whereupon "a fight

---

[1] The Clerk is **DIRECTED** to update the case style in CM/ECF consistent with this caption.

[2] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Docs. 32, 150 & 153-1).

[3] These are the only remaining defendants. Ms. Foy's claims against all other defendants were previously dismissed. (*See* docs. 41, 112, 134 & 167).

broke out." (*Id.* at ¶¶ 21–22). Several Jefferson County Sheriff's Deputies broke up the fight and took Foy to a holding cell. (*Id.* at ¶¶ 23–25). In the holding cell, Defendants Maddox, Payne, Simpson, Wade, Martin, and Ennis beat Foy. (*Id.* at ¶¶ 26–34). Foy was then placed in a disciplinary cell under suicide watch, where neither Defendant Nurse Kyle nor any other prison staff rendered aid to her for days. (*Id.* at ¶¶ 35–73). On these facts, Foy asserts (1) a 42 U.S.C. § 1983 count for excessive force against Defendants Martin, Ennis, Payne, Maddox, Simpson, and Wade, (*id.* at ¶¶ 98–110); (2) a § 1983 failure to intervene count against Defendants Ennis, Payne, Agee, Fletcher, Kyle, Maddox, Simpson, Scott, McCants, and Russell, (*id.* at ¶¶ 111–121); (3) an Americans with Disabilities Act and Rehabilitation Act claim against Defendant Pettway, (*id.* at ¶¶ 122–138); a second Rehabilitation Act claim against Defendant Pettway (which appears to be duplicative of Count 4), (*id.* at ¶¶ 139–156); and (5) a wantonness claim against Defendants Agee, Fletcher, Kyle, Scott, McCants, and Russell, (*id.* at ¶¶ 157–161).

(Doc. 66 at 1–2).

Foy filed this action on November 20, 2019. (Doc. 1). At the time, Foy was represented by attorney Kira Fonteneau. On June 19, 2020, Fonteneau moved to withdraw after Foy "notified her Counsel that she wishes to represent herself." (Doc. 46). The undersigned held a telephone conference on the motion on July 7, 2020, at which the undersigned discussed the ramifications of proceeding *pro se* with Foy. The same day, the undersigned granted Fonteneau's motion to withdraw and stayed the case for 30 days to permit Foy to find new counsel. (Doc. 48).

The stay ultimately continued until November 4, 2020, (*see* doc. 53), and Foy proceeded *pro se*. The parties submitted a proposed amended scheduling order, (doc. 54), which the undersigned entered, (doc. 55). However, on January 22, 2021, Foy moved to amend the scheduling order and to stay the action. (Doc. 62). Specifically, Foy requested to modify the expired January 4, 2021 deadline for expert disclosure and to stay the action because criminal charges were pending against her. (*Id.*). On February 5, 2021, the undersigned denied the motion. (Doc. 66). As to amending the scheduling order, the undersigned noted many of Foy's problems had arisen because she voluntarily chose to proceed *pro se*, and Foy herself had proposed and agreed to a January expert deadline. (*Id.* at 2–3). Additionally, the undersigned found Foy had not demonstrated any diligence in pursuing discovery. (*Id.* at 3–4). As to the stay issue, the undersigned observed that Foy had not provided any specific justification for why her Fifth Amendment rights would be implicated in this action. (*Id.* at 4–5).

On March 1, 2021, former Defendant Daniel Kyle ("Nurse Kyle") moved for summary judgment on the basis that Foy's claim against him requires expert testimony, which Foy could not provide at this juncture. (Doc. 69). The undersigned set a response deadline, (doc. 72), and Foy filed both a motion to reconsider the denial of the motion to amend and a response in opposition to the

motion, (docs. 76 & 77). The undersigned denied the motion to reconsider because while Foy cited a number of health issues, none of them changed the conclusion regarding her diligence. (Doc. 79).

On April 8, 2021, the Jefferson County Defendants moved to compel discovery responses from Foy. (Doc. 80). The undersigned set a response deadline for that motion. (Doc. 81). When no opposition was received, the undersigned granted the motion, ordering Foy to respond by April 29, 2021. (Doc. 82).

On April 30, 2021, having not received discovery responses from Foy, the Jefferson County Defendants moved to dismiss the case for lack of prosecution. (Doc. 83). The undersigned set a May 14, 2021 response deadline for that motion. (Doc. 84). On May 14, 2021, Attorney Anthony Piazza entered a notice of limited appearance for Foy, (doc. 85), and filed a response to the motion to dismiss, (doc. 86). Attorney Piazza also filed a motion to stay or, in the alternative, for a status conference. (Doc. 87). On May 18, 2021, Attorney Piazza filed a notice indicating discovery responses had been served on the defendants. (Doc. 88). The next day, the Jefferson County Defendants filed a reply in support of their motion to dismiss and a response to the motion to stay. (Docs. 89 & 90).

On June 14, 2021, the undersigned held a hearing on the motion to stay. (Doc. 91). At the hearing, Attorney Piazza stated he needed to spend additional time with Foy to determine the scope of his representation, that there may be additional discovery Foy would like to pursue against the Jefferson County Defendants, and that Foy still believed the expert deadline should be extended. Attorney Piazza also indicated that Foy would have the benefit of counsel at her forthcoming deposition to determine whether to assert her Fifth Amendment rights. The undersigned asked Attorney Piazza whether this meant that Foy withdrew her motion to stay; Attorney Piazza indicated he would need to talk to his client. The undersigned stated Attorney Piazza would have additional time to do so, as well as brief the issue of extending the expert deadline.

Following the hearing, the undersigned provided a deadline for Foy to determine whether or not to withdraw the motion to stay and to move for an extension of the expired expert report deadline, should she choose to do so. (Doc. 92). As to the latter, the order directed Foy to "explain why such relief is appropriate, given the facts and analysis set out in the undersigned's previous orders denying such relief, (docs. 66 & 79), and the discussion at the hearing . . . [and] include any and all relevant authority she believes supports such relief." (*Id.*). On June 28, 2021, Foy responded to that order, doubling down on her request to stay the case until her criminal charges are resolved. (Doc. 93). Foy's response also again requested an extension of time for her to provide an expert report. (*See id.*). The undersigned ultimately denied the stay, but also denied the motion to dismiss for lack of prosecution, extending the discovery deadline (for everything but expert testimony) to October 11, 2021, and the dispositive motion deadline to November 10, 2021.

(Doc. 96). The undersigned later permitted Attorney Piazza to withdraw from his limited representation. (Docs. 97 & 98).

On October 11, 2021, Defendants filed the instant motions to dismiss for lack of prosecution and for discovery violations. (Docs. 99 & 100). Their basis for both motions, supported by emails between the parties, is that Foy agreed on several occasions to deposition deadlines and subsequently requested that the deadlines be extended, resulting in her never actually appearing for her deposition prior to the discovery deadline. Specifically, Foy agreed to a September 29, 2021 deposition, (doc. 99–2), but asked on September 28, 2021 to reschedule. (Doc. 99 at 3). Foy then agreed to a 9:00 a.m. October 11, 2021 deposition, (doc. 99–4)—the last day of discovery—but called between 9:10 and 9:15 to tell defense counsel she would not attend. (Doc. 99 at 3–4).

The undersigned set an October 26, 2021 response deadline for the motions. (Doc. 101). On October 15, 2021, Nurse Kyle filed his own motion to dismiss for lack of prosecution. (Doc. 102). The undersigned set a separate October 29, 2021 response deadline for that motion. (Doc. 103). On October 27, 2021, Foy moved to continue her response deadline to the motions to dismiss. (Doc. 104). She stated she misread the orders and believed her responses were all due on the 29th, but in any case requested additional time. (*Id.*). The undersigned granted her until November 4, 2021, to respond, stating that no further extensions would be granted. (Doc. 105). On November 4, 2021, Foy requested "until in the morning" (i.e., November 5, 2021) to respond. (Doc. 106). The undersigned again granted that request, stating again that no further extensions would be provided. (Doc. 107).

On November 5, 2021, Foy again moved to stay her response deadline. (Doc. 108). She states that she had an anxiety attack at the law firm on the date of her deposition, which she told defense counsel. (*Id.* at 3). She also says she offered to reschedule the deposition and pay for their expenses, but they declined. (*Id.*). She details her medical history, including a limp and lingering damage resulting from an accident last year. (*Id.* at 3). She states that she needs to gather medical documentation to show why her case should not be dismissed. (*Id.* at 4). She also asks for additional time. (*Id.* at 5). She has attached a note from a licensed independent clinical social worker ("LICSW") describing her psychological state. (Doc. 108 at 6–7). Among other things, the LICSW states that Foy saw a Jefferson County deputy when she showed up on October 11, 2021 for her deposition, which triggered an anxiety attack that left her "unable to function." (*Id.*)

On November 9, 2021, Defendants moved for an extension of time to file dispositive motions. (Doc. 109). The undersigned granted that motion, staying the deadline and setting a hearing. (Doc. 110). Defendants then filed a reply in support of their motions to dismiss, indicating (among other things) that Foy had not explicitly offered to pay for the deposition, but had stated "I'm pretty sure we can make arrangements for payments." (Doc. 111).

4

> The undersigned held a hearing on the motions on November 16, 2021. At the hearing, Foy explained why she had not attended her deposition. Foy stated she had seen a sheriff's vehicle parked outside the deposition site and called defense counsel to ask about it. Defense counsel had informed her that she had sued various sheriff's deputies, so they had a right to attend her deposition. Defense counsel also stated they were present for security reasons. Foy asked to do her deposition over the phone, which defense counsel rejected. Foy also asked to reschedule, which defense counsel also rejected. Foy then left and went to a doctor's appointment. Defense counsel largely agreed with this, explaining that he had not agreed to continue the deposition because it would cost time and money to do so, and in any case he was concerned that rescheduling the deposition would lead to the same sort of thing happening again on the rescheduled date.
>
> Asked what guarantee she could offer the court that she would abide by future deadlines, Foy stated her guarantee was that she appeared for the hearing. However, Foy also asked for a three- to four-month stay so that she could schedule surgery on her ankle and heal from that before resuming active participation in the case. Foy also indicated therapy would give her time to manage being in a setting with the police.
>
> After the hearing, the undersigned took the motions under advisement.

(Doc. 113 at 2–7).

Ultimately, the undersigned granted in part Defendants' motion for monetary sanctions but denied the motion for dismissal. (*Id.*). In that order, the undersigned stated:

> The undersigned finds Foy's conduct here could support dismissal of her case. First, by refusing to attend her deposition, Foy has unquestionably failed to abide by the scheduling order providing a discovery cutoff of October 11, 2021, supporting dismissal under Rule 37(b)(2)(A)(v). Second, unlike last time, Foy has now engaged in a pattern of conduct that could support dismissal of her case under Rule 41(b). As recounted above, Foy did not initially provide dates for her deposition, and after the undersigned extended the discovery deadline, Foy delayed her first scheduled deposition and did not attend her second scheduled deposition. Furthermore, Foy's response to the motions to dismiss is still not on the record, as she has repeatedly asked to delay her response deadline—even after being informed that no further extensions would be granted. This adds up to a pattern of delaying matters instead of resolving them, which has led to Defendants' inability to take Foy's deposition prior to the discovery deadline.
>
> All that said, both standards the undersigned is asked to apply here require that nothing short of dismissal would be effective. The only issue here is that Foy has not attended her own deposition. While it is a close call, the undersigned finds an order compelling Foy to sit for her deposition or face certain dismissal could solve

5

> that issue. Therefore, the undersigned will deny Defendants' motions without prejudice to the extent they seek dismissal, but will include instructions below regarding scheduling Foy's deposition. If Foy fails to cooperate with those instructions, Defendants may renew their motions to dismiss.

(Doc. 113 at 8–9) (footnote omitted).

Ms. Foy ultimately attended her deposition, and this case proceeded to summary judgment. The undersigned granted in part Defendants' motion for summary judgment, dismissing most claims but permitting two claims to move forward. (*See* doc. 134). Defendants took an interlocutory appeal (*see* doc. 139), and the Eleventh Circuit Court of Appeals eventually affirmed the denial of summary judgment and remanded the case to this court for further proceedings (doc. 153-1). The court received the Eleventh Circuit's mandate on April 1, 2025. (Doc. 153).

The primary issue after remand was trial.[4] On April 3, 2025, the undersigned set this case for a May 13, 2025, in-person status conference to discuss next steps. (Doc. 154). On May 12, 2025, Attorney Piazza called the Clerk of Court's office to inform the court that Ms. Foy now resides in Texas. (*See* doc. 155 n.1). Based on that, the undersigned converted the in-person status conference to a Zoom conference and reset it for May 21, 2025. (Doc. 155).

Attorney Piazza emailed the court on May 19, 2025, to request that the status conference be continued so that the parties could engage in settlement discussions. (*See* doc. 156). The undersigned entered an order continuing the status conference and requiring the parties to file a status report by May 27, 2025, indicating whether magistrate-judge-led mediation would be beneficial. (*Id.*). The undersigned also required Attorney Piazza to file a limited notice of

---

[4] The Eleventh Circuit also directed the undersigned to consider in the first instance an argument raised by Defendants. (*See* doc. 153-1 at 17). The undersigned resolved that issue separately. (Doc. 167).

appearance for the purpose of settlement discussions, which he did. (Doc. 157). The parties filed a joint status report stating that they were amenable to mediation. (Doc. 158). The undersigned referred this case to United States Magistrate Judge Gray M. Borden for mediation. (Doc. 159).

On June 5, 2025, Attorney Piazza moved to withdraw as counsel, stating that "[t]he Plaintiff has directed the undersigned to withdraw his notice of limited appearance on behalf of the Plaintiff in this matter." (Doc. 160). The undersigned set that motion for a July 21, 2025, hearing at 10:30 a.m. (Doc. 161). That order stated: "The Court expects both counsel and Ms. Foy to attend the hearing **in person**." (*Id.*) (emphasis in original). In a footnote, the order further stated:

> The undersigned has previously noted that Ms. Foy currently resides in Texas. (See doc. 155 at 1 n.1). The undersigned anticipates that this order, more than a month in advance of the hearing, will provide sufficient time for Ms. Foy to make arrangements to attend the hearing. It is particularly important that Ms. Foy attend the hearing in person because, if the motion is granted and the parties do not otherwise resolve Ms. Foy's claims, at least some of those claims will go to trial. Ms. Foy will be required to attend the trial of this matter in person, just as she is required to attend this hearing in person.

(*Id.* n.1).

Ms. Foy did not attend the hearing. Rather,

> Ms. Foy called the undersigned's courtroom deputy to explain that she would not be at the hearing and to request that she be allowed to attend by Zoom. Ms. Foy offered no reasonable explanation or justification for why she could not attend the hearing, given that she had notice of it more than a month in advance. Nor did Ms. Foy explain why she waited until the morning of the hearing to inform the court that she would not be there.

> The undersigned held the hearing notwithstanding Ms. Foy's absence. At the hearing, Attorney Piazza informed the court that he and Ms. Foy had previously discussed Zoom. When asked, Attorney Piazza acknowledged that Ms. Foy may have been left with the impression that the hearing could potentially be held by Zoom.

(Doc. 164 at 1–2). The undersigned granted the motion to withdraw for reasons discussed during the *ex parte* portion of the hearing and set the case for an August 5, 2025, Zoom conference to discuss mediation and other next steps. (*Id.* at 2).

Ms. Foy attended the August 5, 2025, Zoom videoconference. She stated that she was not interested in mediation and intended to file a motion to stay the case. The undersigned explained to Ms. Foy at the conference that the nature of the remaining part of this case—trial and pretrial matters—would require that she attend matters in person. The undersigned provided Ms. Foy with an August 19, 2025, deadline to file a motion to stay and directed the Clerk of Court to send Ms. Foy copies of documents relating to the case's procedural history. (Doc. 165).

Ms. Foy did not file a motion to stay by the deadline. Accordingly, on September 5, 2025, the undersigned set this case for a November 13, 2025, pretrial conference. (Doc. 166). The order stated: "**This hearing will be held in person, and Plaintiff is REQUIRED to attend**." (*Id.* at 1) (emphasis in original). The order also directed the parties to submit a proposed pretrial order, noting that "**[t]he undersigned expects the parties to cooperate in drafting the pretrial order without the need for court involvement**." (*Id.*) (emphasis in original). Finally, the order directed that any motion to continue the pretrial conference be filed by October 27, 2025. (*Id.* at 2). The undersigned also set the case for jury trial beginning on December 8, 2025. (Doc. 168).

The court did not receive a motion to continue the pretrial conference. The undersigned *did* receive an email from counsel for Defendants on October 24, 2025, copying Ms. Foy. (*See* doc. 170-2). Defense counsel enclosed copies of draft pretrial orders that they had attempted to negotiate with Ms. Foy, along with emails between defense counsel and Ms. Foy disputing aspects of the pretrial order. (*See* doc. 170-1). The parties did not submit a mutually-acceptable proposed

8

pretrial order. Notwithstanding this, the undersigned felt that the parties' differences could be addressed at the pretrial conference.

On November 13, 2025, the undersigned attempted to hold the pretrial conference. Ms. Foy did not appear at the conference and did not reach out to the court to explain her absence. (*See* doc. 169). Defendants orally indicated that they intended to move to dismiss the case for lack of prosecution, and the undersigned directed them to file a motion to that effect. (*Id.*). The undersigned cancelled the trial.

Defendants filed their motion on November 14, 2025. (Doc. 170). The undersigned set a briefing schedule on the motion, requiring Ms. Foy to file her response by December 5, 2025. (Doc. 171). Ms. Foy filed a response on December 2, 2025 (doc. 173), along with multiple motions (docs. 172, 174, 175, 176, 177 & 178). The undersigned denied one of those motions and deferred ruling on the rest of them pending the resolution of the motion to dismiss. (Doc. 179). On December 11, 2025, Defendants filed their reply. (Doc. 180). Defendants attached to the reply brief multiple documents, discussed further below.

On January 5, 2026, the undersigned's chambers received an email from a person purporting to act on Ms. Foy's behalf. (Doc. 181-1). That email stated that Ms. Foy "was taken into custody on or about December 10, 2025, and is currently incarcerated in a paperless detention facility." (*Id.*). The email also indicated that Ms. Foy "is in the process of preparing a formal Motion to Stay Proceedings, as well as requests to amend and supplement certain filings." (*Id.*). The email finally "respectfully request[ed] that the Court refrain from ruling on the pending motions until [the motion to stay] may be filed and considered." (*Id.*).

9

## II. Analysis

Federal Rule of Civil Procedure 41(b) provides a court may dismiss a case on motion from a defendant when "the plaintiff fails to prosecute or to comply with these rules or a court order." Dismissal with prejudice for lack of prosecution is a harsh sanction warranted "only in the face of a clear record of delay or contumacious conduct by the plaintiff." *Durham v. Florida East Coast Ry. Co.*, 385 F.2d 366, 368 (5th Cir. 1967).[5] The Eleventh Circuit has articulated a "two-part analysis for determining when an action should be dismissed as a sanction. There must be both a clear record of willful conduct and a finding that lesser sanctions are inadequate." *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (citation omitted).

Defendants rely on Ms. Foy's refusal to follow orders to attend matters in person to support their motion to dismiss. (*See* doc. 170 at 1–4). Based on this, they say that they "will continue to incur undue and burdensome costs and expenses related to trial preparation" due to Ms. Foy's "continued refusal to abide by Court orders . . . ." (*Id.* at 3–4). They also point to the undersigned's previous adjudication of motions to dismiss for lack of prosecution, arguing that Ms. Foy's conduct has now risen to the level where dismissal is the only reasonable sanction. (*Id.* at 4–5).

Here, as recounted above, Ms. Foy has established a pattern of sanctionable conduct. First, Ms. Foy has continued her patterns of ignoring or refusing to obey court orders. Previously, that took the form of failing to abide by the scheduling order. Now, Ms. Foy has ignored orders requiring her to attend hearings in person. While Ms. Foy was arguably confused by her former

---

[5] The decisions of the former Fifth Circuit handed down before October 1, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

counsel's reference to Zoom with respect to the hearing on the motion to withdraw (*see* doc. 164 at 1–2), Ms. Foy could not have been confused at all by the order setting the pretrial conference. In bold, underlined text, it stated: "**This hearing will be held in person, and Plaintiff is REQUIRED to attend.**" (Doc. 166 at 1) (emphasis in original).  Furthermore, the undersigned made Ms. Foy aware, both through written order (*see* doc. 161 n.1) and by advising Ms. Foy during the August 5, 2025, Zoom videoconference, that trial and pretrial matters would be dealt with in person.  The undersigned also notes that Ms. Foy's refusal to cooperate with Defendants in drafting a pretrial order is similar to her refusal to cooperate with Defendants in scheduling her deposition.

Second, no lesser sanctions than dismissal are adequate.  Previously, the undersigned found that Ms. Foy's conduct, coupled with previous instances of delay, could support dismissal under Rule 41.[6]  But, as stated above, the undersigned found that "an order compelling Foy to sit for her deposition or face certain dismissal could solve that issue." (Doc. 113 at 9).  Previous lesser sanctions clearly did not deter Ms. Foy from failing to cooperate, even though Ms. Foy has been on notice since at least December 2, 2021, that dismissal is a possible sanction she could face. And, practically, it does not appear that Ms. Foy has any interest in attending in-person proceedings even when the court orders them, making trial of this matter impossible.[7]

---

[6] The undersigned also considered dismissal under Federal Rule of Civil Procedure 37(b)(2)(A)(v), which is not applicable here.

[7] Ms. Foy should be aware of exactly what the undersigned means by saying that it would be practically impossible to try this case.  First, Ms. Foy's physical presence in the courtroom at trial is not optional.  This court does not and cannot conduct trials remotely.  Second, a trial involves time commitments and a great deal of work by the court, the parties, and others.  For example, the court's jury section must organize a jury pool for the trial, a process that involves months of work.  The parties must subpoena witnesses, the witnesses must make arrangements so that they can be available for trial, the court must resolve motions in limine and other trial-related disputes between the parties, and so on.  When a trial is delayed or cancelled, most of this work is

Ms. Foy states in her response that she has not abandoned the case and that "[a]ny delays resulted from circumstances beyond the Plaintiff's control, including homelessness, medical issues, and lack of access to reliable technology." (Doc. 173 at 1). Ms. Foy represents that she "never received critical court documents," directly affecting her ability to file motions. (*Id.*). Ms. Foy also indicates that "[p]reparing filings forces Plaintiff to revisit traumatic experiences" and that she lacks "access to a computer, printer, or stable workplace," requiring her to prosecute this case solely via her phone. (*Id.*). Finally, Ms. Foy indicates that she has "been diligently preparing . . . motions" for the court's review. (*Id.*).

The undersigned has considered Ms. Foy's excuses and explanations and finds them wanting. First, as Defendants note in their reply, Ms. Foy has more access to technology than she lets on. Ms. Foy has frequently been able to respond to emails within minutes of receipt. For example, she responded to Defendants' email providing the court with the proposed pretrial orders within four minutes of receipt. (Doc. 180-2). Because the undersigned's chambers email was copied on this email, the undersigned's staff observed this response in real time. Further, Ms. Foy has filed numerous motions and has been able to contact the court to request that proceedings be rescheduled. The undersigned highly doubts that access to technology presents a problem for Ms. Foy sufficient to explain her conduct.[8]

---

rendered useless and must be redone for a rescheduled trial. Given past events, the undersigned highly doubts that a trial in this matter would go forward without such a delay.

[8] Defendants have also screen-capped Facebook posts purporting to be from Ms. Foy's account to support that she has an active social media presence notwithstanding her alleged lack of access to technology. (Doc. 180-1). The undersigned is not relying on these posts to support dismissal because the record as a whole reflects that dismissal is appropriate even without them. That said, the undersigned has no reason to doubt that these posts are authentic because they are (or were, as of December 11, 2025) publicly available on Facebook—which the undersigned

Second, Ms. Foy's purported lack of receipt of documents disposing of her claims against various defendants is not an excuse for her behavior. Ms. Foy's claims were dismissed in large part because she declined to defend them. Ms. Foy failed to file a response to Defendants' motion for summary judgment when she had the opportunity to do so (in 2022) and thus presented no evidence in support of her claims. The undersigned dealt with the lack of response as appropriate in this Circuit. (*See* doc. 134 at 13). Ms. Foy's remaining claim proceeded ***solely*** because Defendants failed to meet their summary judgment burden to show the absence of a factual dispute. Furthermore, Ms. Foy has repeatedly failed to provide a valid address for service, resulting in orders being returned to the court. The undersigned also personally directed that the Clerk of Court send these documents to Ms. Foy on October 5, 2025. (*See,* doc. 165). And, most importantly, the presence or absence of additional defendants had no bearing on Ms. Foy's ability to attend the pretrial conference in person.

Finally, while Ms. Foy states that she has been diligent, the record reflects that she has not. Ms. Foy has repeatedly refused to comply with court-imposed deadlines. Ms. Foy has discussed filing a motion to stay since at least August 5, 2025, and she has still not filed one—not by the August 19, 2025, deadline the undersigned imposed after the Zoom videoconference Ms. Foy attended (*see* doc. 165), not by the October 27, 2025, deadline to continue the pretrial conference or trial (*see* doc. 166), and not with the plethora of motions Ms. Foy filed on December 2, 2025.

---

knows because the undersigned viewed them on that date. The most troubling of these is a November 26, 2025, post in which Ms. Foy states "I made the clear and conscious decision not to even come to Alabama because of the civil suite [sic]" (doc. 180-1 at 2), suggesting that she deliberately refused to attend the pretrial conference, knowing that her presence was required. Again, though, the undersigned explicitly finds that dismissal is warranted even without the Facebook posts.

13

This case is more than six years old, and while some of the age of the case can be attributed to the interlocutory appeal and time the undersigned spent considering dispositive motions, much of it can also be attributed to delays created purely by Ms. Foy's lack of diligence. There is no reason to assume Ms. Foy will be more diligent in the future, and every reason to assume she will continue the same patterns of conduct.

As discussed above, Ms. Foy's conduct has been sanctionable before now. The undersigned has given Ms. Foy a great deal of leeway in the past. That leeway cannot extend any further given that the only thing remaining for this case is trial. No lesser sanction than dismissal will suffice, so this case will be dismissed.[9]

### III. Conclusion

Defendants' motion to dismiss (doc. 170) is **GRANTED**. A separate order will be entered.

DONE this 11th day of March, 2026.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

[9] To the extent that the January 5, 2026, email requesting that the undersigned decline to rule on pending motions (doc. 181-1) can be attributed to Ms. Foy, any arguments in opposition to dismissal for lack of prosecution should have been included in Ms. Foy's response to the motion. That said, the undersigned strongly doubts that there is an argument that dismissal would be inappropriate on this record.

As for the substance of Ms. Foy's pending motions, each of them concerns how this case would be managed going forward: continuing deadlines (doc. 174), reinstating defendants (doc. 175), sealing "documents attached to future filings," (doc. 176), permitting remote appearances (doc. 177), and compelling discovery (doc. 178). Because this case is due to be dismissed, those matters are not relevant.